IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIAN TOWNSEND | § | |
| | § | CIVIL ACTION NO. |
| v. | § | A-08-CV-222-LY |
| | § | |
| CITY OF AUSTIN | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment, filed on June 24, 2009 (Clerk's Docket No. 25); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed on July 20, 2009 (Clerk's Docket No. 30); Appendix to Plaintiff's Response, filed on July 20, 2009 (Clerk's Docket No. 31); and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, filed on July 31, 2009 (Clerk's Docket No. 33).

On August 3, 2009, the District Judge referred the above to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant law, as well as the entire case file, the undersigned issues the following Report and Recommendation.

**I. BACKGROUND**

Plaintiff Marian Townsend ("Townsend"), an African-American female, alleges that she was discriminated against while working for the City of Austin's Austin/Travis County Emergency

Medical Services Department ("the Department"). The facts giving rise to Townsend's claims are as follows.

Townsend began working as an Accounting Technician for the Department in 1999. From 1999 until 2006, Dee Hatch and Teresa Cardona were co-supervisors of the Department, Townsend was the senior employee and "lead" in Billing, and Jodi Hassinger was the senior employee and "lead" in Data Entry. After Hatch's retirement in 2006, there is some dispute as to who took over supervision of the workgroup. The Department contends that Cardona assumed supervisory duties over the entire workgroup, while Townsend alleges that supervisory duties were split between her and Cardona.[1] According to Townsend, Cardona became the defacto supervisor of the Data Entry/Research area, and Townsend became the de facto supervisor of the Billing and Customer Service area.

In March 2007, based on business needs, the Department requested that the City's Human Resources Department (HR) approve reclassification of the Claims Supervisor position (held by Cardona) to Administrative Manager, and of the Senior Patient Account Representative (Lead) positions (held by Townsend and Hassinger) to Patient Account Supervisor positions. Each Patient Account Supervisor would manage the workgroup in which they were currently leads, while the Administrative Manager would supervise the two new Patient Account Supervisors and all of their employees.

HR granted the request for reclassification and the positions were posted internally at the Department. Townsend and Hassinger applied for the Patient Account Supervisor positions and

---

[1] The only evidence that these duties were split is found in Townsend's affidavit. Whether this is in fact correct is not material to the Court's disposition of the motion.

Townsend and Cardona applied for the Administrative Manager position. After the Department interviewed the applicants, Townsend and Hassinger were selected for the Patient Account Supervisor positions, while Cardona was selected for the Administrative Manager position.

Townsend believes that she was more qualified for the Administrative Manager position and that this failure to promote her was because of her race. On June 19, 2007, Townsend filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the EEOC), complaining of race discrimination. Townsend also complained to the Executive Directors of the Department—Richard Herrington and Ernie Rodriguez[2]—about the Department not hiring her for the Administrative Manager position. According to Townsend, in the months that followed the filing of her charge of discrimination, the Department discriminated against her and retaliated against her in various ways such that Townsend felt compelled to resign her employment with the Department. Townsend left the Department in July of 2008.

Townsend now brings claims against the Department under Title VII and 42 U.S.C. § 1981,[3] alleging that she was (1) denied the promotion to the position of Administrative Manager because of her race; (2) denied an increase in pay as Patient Account Supervisor commensurate with her duties and responsibilities because of her race; and (3) constructively discharged because of her race

---

[2] Rodriguez replaced Herrington upon Herrington's retirement.

[3] Both types of discrimination claims are evaluated under the same standard. *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746, 754 (S.D. Tex. 2007) ("The summary judgment test for assessing discrimination claims is the same under Title VII and § 1981.") (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). The same is true for retaliation claims. *Id.* at 762 ("The elements of a retaliation claim under § 1981 are identical to the Title VII elements.") (citing *Davis*, 383 F.3d at 319). Therefore, while this Report and Recommendation only refers to Title VII, it applies equally to the § 1981 claims.

and in retaliation for her complaints of discrimination. The Department has moved for summary judgment on all of Townsend's claims.

## II. ANALYSIS

A.  **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Commerce and Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, courts must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Furthermore, courts "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The nonmovant may not rely on mere allegations in the pleadings. *Id*. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Rather, the nonmoving party must

4

set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by the Court. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.      Failure to Promote**

Title VII of the Civil Rights Act of 1964, as amended in 1972, makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). In her first claim, Townsend claims that she was denied a promotion to the position of Administrative Manager because of her race.

A Title VII plaintiff carries the initial burden of establishing a prima facie case of discrimination. *See Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In a failure to promote claim under Title VII, a plaintiff must show that: (1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).

If a plaintiff shows a prima facie case, the burden shifts to the defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If a defendant can produce such evidence, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons." *Id.* at 253. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. Because the Court is reviewing this issue in the context of a summary judgment motion, the plaintiff must at least demonstrate the existence of a fact question regarding whether the reason offered was the true reason.

### 1. *Prima facie case*

It is undisputed that Townsend was within a protected class, that she was not promoted to the position of Administrative Manager, and that this position was filled by someone outside the protected class. In regard to the second element of a prima facie case—whether she was qualified for the position sought—the Department argues that Townsend was not qualified because she did not have three years of supervisory experience, as was required for the position. In response, Townsend does not argue that she had the required supervisory experience for the position; rather, she argues that supervisory experience was "largely irrelevant." However, the job posting for the Administrative Manager position specifically included as minimum qualifications "five (5) years experience in a managerial support service function which included three (3) years supervisory experience." *See* Defendant's Motion for Summary Judgment, at Exhibit 16. Thus, there is no dispute that Townsend did not meet the qualifications defined in the job posting for the position she

6

sought. Accordingly, Townsend has failed to establish this element of her prima facie case that she was denied a promotion because of her race.

    *2.    The Department's Legitimate Nondiscriminatory Reason*

Even assuming that Townsend was qualified for the Administrative Manager position, the Department argues that they were justified in promoting Cardona over Townsend because Cardona's qualifications were plainly superior to those of Townsend. The Department offers undisputed evidence that Cardona's experience exceeded Townsend's in all areas, including experience as a supervisor prior to EMS employment, total experience at EMS, and experience as an EMS supervisor.

Townsend does not contest that she had less experience than Cardona. Further, she concedes that to prevail on this claim she must show that the differences in her qualifications from Cardona's were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Cardona] over the plaintiff for the job in question." *Deines v. Tex. Dep't. of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999). Plaintiff's only attempt to demonstrate the clear superiority of her qualifications over Cardona's consists solely of argument, and no evidence. Specifically, she contends that:

> [a]lthough Ms. Cardona may have slightly more years of supervisory experience, the sheer number of years one has served as a supervisor does not necessarily mean that that person is more qualified to serve as a manager. It is the quality of the supervision provided and the breadth of experience obtained through that supervisory role that makes a person more qualified to be a manager. Judged by those standards, Ms. Townsend was clearly better qualified.

However, Townsend offers nothing to substantiate her belief that she was "clearly better qualified" than Cardona, despite the fact that Cardona had more experience than Townsend in all relevant areas.

7

Simply claiming superiority is not sufficient, and Townsend has wholly failed to show that the "disparities in [her] qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Cardona] over the plaintiff." *Deines*, 164 F.3d at 280–81. Accordingly, even assuming Townsend was qualified for the position, summary judgment should be granted on this claim because the Defendant has demonstrated a legitimate non-discriminatory reason (*i.e.*, Cardona's qualifications) to support its decision to promote Cardona over Plaintiff.

## C. Discriminatory Compensation

In her second claim, Townsend alleges that she was not paid what she should have been paid as Patient Account Supervisor because of her race. In order to establish a prima facie case of discrimination in compensation, Townsend must show that she was a member of a protected class and that she was paid less than a non-member for work requiring substantially the same responsibility. *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). As the Department argues, Townsend has not identified any error in the manner in which the compensation zoning was applied to her, and she acknowledges that the process was applied to her as it would have been applied to any other City employee. Further, Townsend identifies no other employee who was paid more for performing substantially the same work. All Townsend offers in response is her subjective belief that, had she been white or Hispanic, she would have been paid at a higher rate than she was, considering the nature, scope, and extent of her duties and responsibilities.

Because there is no evidence that Townsend was paid less than a non-member of her protected class for work requiring substantially the same responsibility, she has failed to establish

a prima facie case of discriminatory compensation. Accordingly, summary judgment should be granted on this claim as well.

D.     **Discrimination and Retaliation Following Townsend's Complaints**

Townsend next alleges that following her complaints of discrimination for not being promoted to the Administrative Manager position, she suffered discrimination and was retaliated against for her prior complaints of discrimination. To prevail on either of these claims, Townsend must demonstrate that she suffered a legally actionable "adverse employment action." *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Without proving such an action, Townsend cannot make the necessary prima facie cases of discrimination or retaliation. *Id.*

Townsend argues that the Department took adverse employment actions by constructively discharging her. To show a constructive discharge, a plaintiff must show that the employer made working conditions so intolerable that a reasonable employee would feel compelled to resign. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2001). In determining whether an employer's actions constitute a constructive discharge, courts consider the following relevant factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Id.* at 771-72; *see also McCoy*, 492 F.3d at 557.

Considering these factors, the evidence does not support the conclusion that a reasonable employee in Townsend's position would have felt compelled to resign. Townsend was not demoted, she suffered no reduction in salary, she was under no threat of termination, she was not relieved of any job responsibilities, she was not reassigned to menial or degrading work, and she never received

9

an offer of early retirement. In fact, Townsend received pay raises and positive performance reviews during the period she was allegedly being discriminated and retaliated against. *See* Defendant's Motion for Summary Judgment, at Exhibit 8, ¶¶ 7, 9.

Townsend also argues that the Department created such a hostile work environment that she felt compelled to quit. To show that a hostile work environment existed that led to her constructive discharge, Townsend first complains that Cardona used her power as Townsend's supervisor to demand that Townsend assist her in performing tasks assigned to Cardona, or to actually require Townsend to perform the tasks for Cardona, and then pass off Townsend's work as her own. *See* Plaintiff's Response, at 14. Townsend also alleges that when Townsend "attempted to exercise her supervisory authority, by recommending the termination of one of the employees under her supervision, her supervisors overruled her recommendation, and, in doing so, embarrassed and humiliated her by giving her subordinate employees the impression that she really was not in charge and had no authority over them." *Id.*[4]

Harassment may create a hostile work environment and cause a constructive discharge, but only if it is "severe or pervasive" and "create[s] an environment that a reasonable person would find hostile or abusive." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work

---

[4]This is referring to an incident where Townsend received a reprimand on October 3, 2007. Townsend had recommended terminating an employee, and her supervisors decided instead to have the employee do a 90-day Performance Improvement Plan. Townsend did not agree with this decision, so she refused to sign the Plan, which led to the reprimand. Defendant's Motion for Summary Judgment, at Exhibit 8, ¶ 8.

performance." *Id.* Considering all of these factors, Townsend's hostile work environment claim fails as a matter of law. First, Townsend concedes that none of the conduct she complains of was physically threatening. Second, contrary to Townsend's assertions, and to her own subjective impression of the activity, the conduct at issue was not "extremely humiliating." The conduct certainly was not severe. Moreover, the evidence shows that Townsend received good performance reviews (and accompanying pay raises) throughout this time period and that she was under no threat of termination. *See* Defendant's Motion for Summary Judgment, at Exhibit 8, ¶¶ 7, 9. Thus, by all appearances, the conduct did not unreasonably interfere with her work performance.

Because there is insufficient evidence to allow a jury to find that Townsend was constructively discharged, summary judgment should be granted on Townsend's claim that she was constructively discharged because of her race and in retaliation for her complaints of discrimination.

   1. *Retaliation apart from the constructive discharge*

In her response, Townsend appears to argue that the actions mentioned above, even if not amounting to a constructive discharge, qualify as an adverse employment action for a retaliation claim as defined in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). First, the undersigned does not believe the actions Townsend complains about would dissuade a reasonable worker from making or supporting a charge of discrimination. But even assuming the actions could meet this test, Townsend's retaliation claim would still fail. This is because Townsend has failed to establish any causal connection between the actions of her supervisors and her complaints of discrimination. Rather, the evidence shows that her supervisors took the actions that they did because of her insubordination, or, in regard to the allegation that she was given work and not given proper credit, simply because she was lower in the chain of command. While Townsend

was a supervisor, this did not mean that she had ultimate authority (as she appears to believe), nor does it mean her supervisors could not give her work. In fact, the evidence shows that Townsend was a low-to-mid-level supervisor who had many supervisors over her, including Cardona. Just because Townsend's supervisors reprimanded her when she refused to follow their instructions, or gave her work and took credit for it, does not mean that they took these actions in retaliation for her complaining about not getting the promotion that she desired. And Townsend offers nothing to suggest otherwise. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) ("To establish a prima facie case of retaliation, the plaintiff must establish . . . a causal connection exists between the protected activity and the adverse employment action.").

Because Townsend has not submitted any evidence that a causal connection exists between the protected activity and the adverse employment action—that is, assuming there was an adverse employment action—summary judgment should be granted on her claim that her supervisors retaliated against her for her complaints of discrimination.

### III. CONCLUSION

Based on the foregoing, the Court is of the opinion that Defendant's motion for summary judgment should be granted. The Department is entitled to summary judgement on Townsend's failure to promote claim because she was not qualified for the position and, even assuming she was, it is clear Cardona was more qualified, and Townsend has failed to demonstrate otherwise. The Department is entitled to summary judgement on Townsend's discriminatory compensation claim because there is no evidence that Townsend was paid less than a non-member of her protected class for work requiring substantially the same responsibility. Finally, the Department is entitled to summary judgement on Townsend's other discrimination and retaliation claims because Townsend

suffered no adverse employment action, as she was not constructively discharged, and because even if the other actions constituted adverse employment actions for a retaliation claim, Townsend cannot establish a causal connection between her complaints and these actions.

## IV. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Judge **GRANT** Defendant's Motion for Summary Judgment (Clerk's Docket No. 25). Furthermore, because the undersigned recommends that summary judgement be granted on all of Plaintiff's claims, in the event the District Judge accepts this recommendation, the undersigned **RECOMMENDS** that the District Judge **ENTER JUDGMENT** in this case that Plaintiff takes nothing.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant

to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of October, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE